**In re George A. ADAMS, Eleanor B. Adams, Debtors.**

**HOUSEHOLD FINANCE CORPORATION, a Delaware corporation, Plaintiff Below, Appellee,**

v.

**George A. ADAMS, Eleanor B. Adams, and John Ellis, Trustee, Defendants Below, Appellants.**

Civ. A. No. 82–682.

United States District Court, D. Delaware.

Feb. 4, 1983.

Jeremy J. Abelson, Wilmington, Del., for appellee, Household Finance Corp.

Robert C. Wolhar, Jr., of Wolhar & Moore, Georgetown, Del., for appellants, George A. Adams, Eleanor B. Adams, and John Ellis, trustee.

## OPINION

STAPLETON, District Judge.

This is an appeal from a decision of the Bankruptcy Court granting plaintiff, Household Finance Corporation ("HFC"), relief from the automatic stay provisions of 11 U.S.C. § 362(a). The trial court's order allows HFC to foreclose its mortgage on appellants' property.

The Adamses filed a voluntary petition in bankruptcy under Chapter 7 on November 14, 1980. On April 9, 1981, Hudson Transfer & Construction Co., Inc. filed a complaint to determine dischargeability. That action is still pending below. On August 3, 1982, HFC filed a complaint requesting that the Bankruptcy Court remove the automatic stay of 11 U.S.C. § 362(a) for "cause" under 11 U.S.C. § 362(d)(1) to permit HFC to exercise its right of foreclosure on the Adamses' property. On August 31, 1982, a hearing was held and the relief was granted. The foreclosure action has been stayed pending this appeal.

The facts are not in dispute. The property in question is currently being used as the Adamses' family residence. Its value is appraised at $31,000 and there is insurance on the house in the amount of $38,000.

There is a first mortgage on the property held by Girard Bank (formerly Farmers Bank) securing a debt with a current balance of about $3,000. The Adamses have continued to make their regular monthly payments to Girard since the filing of the bankruptcy petition. Girard Bank has not attempted to pursue any foreclosure action against the Adamses.

HFC, the only other lienholder on the property, holds a second mortgage securing a debt of $6,553.02[1] as of the date of the hearing. The rate of interest on that loan is about 22%. No payments were made on this mortgage between the time of the filing of the bankruptcy petition and the date of the hearing.

Finally, the Adamses claim a $15,000 exemption with respect to the property under Section 522(d) of the Bankruptcy Act.

The statutory framework is as follows. Section 362(a), 11 U.S.C. § 362(a), provides for a broad stay of litigation, lien enforcement, and other actions which would affect or interfere with property of the estate or debtor. 2 Collier on Bankruptcy, ¶ 362.01 at 362–5 (15th ed.) This stay is automatic upon the filing of the bankruptcy petition.[2] The purpose of the automatic stay is set out in the legislative history of the Bankruptcy Act:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R.Rep. No. 595, 95th Cong., 1st Sess., *reprinted in* 1978, U.S.Code Cong. & Ad. News, 5787, 6296–7.

With respect to bankruptcy proceedings under Chapter 7, the stay lasts until the time a discharge is granted or denied. Sec-

---

1. This figure includes the unpaid principal as well as accrued interest and other costs to the date of the hearing.

2. Section 362(b) provides for certain exceptions to the stay not relevant here.

tion 362(c). The stay may be lifted sooner, however, by court order upon petition of a party in interest if the Court finds there is "cause, including the lack of adequate protection of an interest in property of such party in interest." Section 362(d)(1). Relief may also be granted "with respect to a stay of an act against property, if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." Section 362(d)(2). Section 362(e) provides for an expedited hearing on relief under Section 362(d).

In the proceedings below, after evidence was presented as to the undisputed facts given above, the bankruptcy judge announced her decision to grant relief to HFC from the stay:

> ... It is the debtors' contention that HFC is adequately protected until pending litigation is resolved. That litigation involves another creditor who is contesting their right to discharge or alternatively that its debt is non-dischargeable.
>
> Debtors have made regular payments to Farmers/Girard but have paid nothing to HFC since November 1980 when debtors filed their bankruptcy petition. The debtors have made no effort to pay anything to HFC despite their continued occupancy and their stated intent to remain in the property. Despite the fact that the value of the property may be sufficient to ultimately pay off HFC in full, the debtors' failure to pay anything to HFC during the course of their bankruptcy proceeding is cause for relief from the stay.

Transcript pp. 17–18. Thus, it was the trial judge's view that the failure to make regular mortgage payments over an extended period of time constitutes "cause" under Section 362(d)(1), even where there is adequate protection to the creditor in the form of equity in the property. The appellants challenge this view arguing that such a failure is only relevant to a consideration of whether the creditor is adequately protect-

ed and that HFC is adequately protected here.

■ The term "adequate protection" is not defined in the Act, but Section 361 gives examples of what will constitute adequate protection for a creditor for purposes of Section 362. Thus, the making of periodic cash payments to the creditor, or the giving of an additional or replacement lien, to the extent necessary to compensate for any decrease in value of the debtor's property are such examples.[3] Further, courts have found that the creditor is adequately protected where, if the creditor foreclosed on the collateral, there would be sufficient equity in the property for the creditor to cover fully on foreclosure the entire balance due on the debt. See In re Monroe Park, 17 B.R. 934, 939 (D.C.D.Del.1982); In re San Clemente Estate, 5 B.R. 605, 610 (Bkrtcy.S. D.Cal.1980).

The purpose of incorporating the concept of adequate protection in the Act is set forth in the legislative history of Section 361:

> ... Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interest. Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), reprinted in 1978, U.S.Code Cong. & Ad.News 6295.

It is evident that the legislative concern was with whether in any particular situation there is a means for providing a secured creditor with reasonable assurance that it will receive the full value of what it bargained for. It is clear from the legislative history, however, that it was not in-

---

**3.** The third and last example in Section 362 is a catch-all where the debtor provides the creditor with such relief as will result in the "indubita-

ble equivalent" of the creditor's interest in the property.

tended that a creditor be guaranteed its precise bargain in kind under the bankruptcy laws. The protection the Bankruptcy Act offers is that either a secured creditor is given reasonable assurance of ultimately receiving the value of its bargain by, for example, one of the methods outlined in Section 361, or the creditor is allowed to petition for the relief of Section 362(d).

The Act also does not delineate the precise bounds of what constitutes "cause" other than "lack of adequate protection," but the general notion of what the legislators had in mind is discernible from the legislative history:

> ... The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause .... a desire to permit an action to proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances.

*Id.* at 6300. Thus, the general idea is that "cause" exists where the other proceeding bears no relation to the bankruptcy case or no relation to the purpose of the automatic stay.

The situation presented here, that of a mortgagee of an individual's residence not receiving mortgage payments after the individual files for bankruptcy, is a common one and clearly bears a close relationship to the bankruptcy case. Certainly such a common and predictable occurrence must have been evidence to the drafters; in fact, they undoubtedly envisioned such a situation when they acknowledged that, in bankruptcy, creditors may not receive their bargain in kind:

> Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.

*Id.* at 6295.

Further, their statement evinces the intent that where the secured creditor does not receive its bargain in kind, as here, the relevant consideration is whether or not, nevertheless, the creditor is adequately protected by the assurance of ultimately receiving the value of its bargain. If the drafters had expected such a common situation as is presented here to be an independent "cause," surely it would have been mentioned in the legislative history discussing other causes.

Finally, if a mortgagee could be given relief from the automatic stay whenever a debtor failed in his or her mortgage payments, the very purpose of the automatic stay to provide the debtor with a respite from "the financial pressures that drove [him or her] into bankruptcy" would be subverted. Because it is a common occurrence for individual debtors to default on mortgage payments at the time of bankruptcy, if mortgagees were allowed to pursue foreclosure action during the pendency of bankruptcy proceedings, most individual debtors would not be given the contemplated relief from financial pressures.[4]

From the foregoing, it is clear that HFC is entitled to relief under Section 362(d)(1) only if it is not adequately protected. Although the trial court did not make a specific finding as to whether HFC was, in fact, adequately protected, and, accordingly, a remand for such a finding might be appropriate, it is clear from the undisputed evidence that HFC is adequately protected. Even after the $15,000 exemption, and the

---

4. In accord with the holding of this Opinion is *In the Matter of Madison Hotel Associates,* 18 B.R. 218 (Bkrtcy.W.D.Wis.1982), which held

primary lien, there is approximately $13,000 of equity remaining to cover the entire debt to HFC of about $6,500. Such an amount is clearly enough to protect HFC given that the property is more than adequately insured and there was no evidence that the property was decreasing in value. This finding does not mean, however, that in the event of changed circumstances, HFC could not come forth and show a lack of adequate protection based on the changed circumstances.

that delay in the assertion of a creditor's rights unaccompanied by demonstrable economic loss is not "cause" for relief under Section 362(d)(1). Plaintiff cites several cases for the proposition that lack of regular payments is independent "cause" for relief under Section 362(d)(1). While there is some language to that effect in *In re The Trident Corp.,* 19 B.R. 956, 958 (Bkrtcy.E.D.Pa.1982), it was not necessary to the result because the court found only an "equity cushion" of 10%. Further, on appeal, the District Court affirmed solely on the basis that the creditor was not adequately protected. 22 B.R. 491 (Bkrtcy.E.D.Pa.1982). In neither of the other cases, *First Federal Savings & Loan Assoc. of Minneapolis v. Whitebread,* 18 B.R. 142 (Bkrtcy.Mich.1982), or *In re*

*Hinkle,* 14 B.R. 202 (Bkrtcy.E.D.Pa.1981), did the debtor attempt to show that the creditor was adequately protected by sufficient equity in the property.

Plaintiff has also asserted that it is the purpose of the Bankruptcy Act to ensure that all creditors are treated equitably and that, therefore, they have a right to payments if the first mortgagee is receiving payments. The Act, however, clearly does not contemplate the granting of such a broad right. If the payments to the 1st mortgagee do not adversely affect the position of HFC, then the Act's purposes are satisfied. In this case, if there has been any change in HFC's position, it is an improved one because payments to the first mortgagee improve HFC's equity position.