**In re Linda CROMPTON, Debtor.**

**Bankruptcy No. 85–05312K.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 7, 1987.

David Sambolin, Philadelphia, Pa., for debtor/plaintiff.

David H. Rosenfeld, Philadelphia, Pa., for defendant.

Katherine McAlice, Philadelphia, Pa., for defendant.

James J. O'Connell, Philadelphia, Pa., Chapter 13 Standing Trustee.

David A. Searles, Philadelphia, Pa., for debtor/Mitchell Case.

James H. Gorbey, Jr., Media, Pa., for Frankford Trust Bank/Mitchell Case.

Irwin Trauss, Philadelphia, Pa., for debtor/Jablonski Case.

Lawrence T. Phelan, Philadelphia, Pa., for Meritor Mortg. Corp. East/Jablonski Case.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

We address herein several disputes which have arisen in the aftermath of our previous decision in this case, reported as *In re Crompton*, 68 B.R. 831 (Bankr.E.D. Pa.1987). In that decision, we held, on the basis of 11 U.S.C. §§ 502, 506, that the secured portion of the claim of the Debtor's mortgage in the interest of the estate of the Debtor in a premises co-owned by the Debtor and a man to whom she was not legally married, was $2,500.00, half of the value of the premises, a figure far less than the mortgage balance. The matters presently before us include a revived Motion of the Mortgagee for relief from the automatic stay and a series of objections by

the Mortgagee to the Debtor's Plan to pay off the $2,500.00 claim in full under her Plan, based, *inter alia*, on 11 U.S.C. §§ 1325(a)(5)(B) and 1325(b)(1)(B).

Considering first the mortgagee's Objections to confirmation of the Plan, we reject most of them, holding that (1) payment of the secured portion of the claim of $2,500.00, plus interest at the market rate, which we find to be ten (10%) percent, on that portion of the payment deferred beyond the date of confirmation of the Plan, satisfies the requirement, pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii), that the property distributed "is not less than the amount of the secured claim;" and (2) given that we are imposing additional expenses upon the Debtor's rather modest budget in connection with the Mortgagee's Motion for relief from the stay, we believe that, as long as the Debtor continues to pay $96.57 to the Trustee under the Plan, for a total of thirty-six (36) months, as she did through its first thirteen (13) months, she is providing that all of her "projected disposable income ... will be applied to make payments under the plan," pursuant to 11 U.S.C. § 1325(b)(1)(B). Since the alterations which we shall compel to the Debtor's Plan are relatively modest, we believe that the Debtor's prospects for performance according to her Plan are good.

The conclusion that the Debtor's Plan is basically sound is the linchpin of our analysis as to whether the Mortgagee is entitled to relief from the automatic stay on the basis of either of the alternative prongs of 11 U.S.C. §§ 362(d)(1) or (d)(2). Therefore, although we shall order the Debtor to insure the property and make certain that all real estate taxes are paid from 1987 through the date of the completion of the Plan in order to adequately protect the Mortgagee, we shall deny the Motion provided these conditions are met.

On January 9, 1987, we entered the Opinion reported as indicated above and an Order in Adversarial No. 86–0527S, in this case, a proceeding initiated by the Debtor, LINDA A. CROMPTON (hereinafter referred to as "the Debtor"), against BOULEVARD MORTGAGE COMPANY (hereinafter referred to as "The Mortgagee"), the holder of a first mortgage, insured by the Federal Housing Administration (hereinafter referred to as "FHA"), on a home located at 129 East Willard Street, Philadelphia, Pennsylvania 19134, on which the mortgage obligors were the Debtor and MICHAEL KENNY (hereinafter referred to as "Kenny"), a man with whom the Debtor lives as husband and wife and who is the father of her two young children, but to whom she is not legally married. In that Opinion, applying 11 U.S.C. §§ 502, 506, we valued the secured portion of the Mortgagee's claim in the interests of the Debtor's estate in the home at $2,500.00, half of the $5,000.00 value which we attributed to the home. In our Order, we also scheduled a hearing to consider both confirmation of the Plan and a Motion of the Standing Chapter 13 Trustee to dismiss the case on January 21, 1987; required the Debtor to file any amendments to the Plan on or before January 14, 1987; and required any interested party to file any Objections to confirmation on or before January 21, 1987, or assert same at the confirmation hearing on that date. We believed that our Opinion had resolved the largest area of dispute in the case and we hoped that this Order would bring the issue of confirmation to a rapid conclusion.

However, because the Mortgagee has raised several thoughtful issues in its filings subsequent to our Opinion and Order, final disposition of Confirmation has been delayed. We regret this delay, but we note that several of the issues raised here are likely to be recurrent,[1] and therefore, we address them at some length herein.

One response of the Mortgagee to our Opinion and Order was a request that we reconsider them, pursuant to Bankruptcy

---

1. In fact, we have before us similar issues in two other cases, *In re Mitchell, Mitchell v. Frankford Trust Co., et al.*, Case No. 87–00532S, Adversarial No. 87–0264S; and *In re Jablonski*, where, subsequent to our decision reported at 70 B.R. 381 (Bankr.E.D.Pa.1987), disputes similar to the contentions here regarding the impact of 11 U.S.C. § 1325(a)(5)(B) have arisen. Both cases are presently in the course of briefing of issues similar to those resolved here.

Rule 9023 and Federal Rule of Civil Procedure 59(e), because we allegedly erroneously "declined to entertain [the Mortgagee's] testimony concerning the taxes that [the Mortgagee] had paid on the premises between the inception of the mortgage in 1984 and the present," which arguably would have enhanced the Mortgagee's secured claim. In our Order of March 5, 1987, setting forth a schedule of future proceedings in this matter, we denied that Motion. Our review of the tape recording of the hearing on the adversarial proceeding revealed that the Mortgagee's trial counsel, who was replaced by present counsel during the briefing, did not offer such testimony at the hearing. Further, although we acceded to the request of the Mortgagee's new counsel to allow her additional time to submit her Brief, the fact of, and the significance of, the payment of taxes by the Mortgagee was not raised, nor was there, as would have been necessary, a Motion to reopen the record filed to present testimony relevant to this subject. We have noted no appeal from our Order of March 5, 1987, therefore our rendering of our determination that the entire extent of the Mortgagee's secured interest in the premises is $2,500.00, considering all factors which were or could have been raised in that proceeding, must be deemed final as of the hearing date of November 5, 1986, and the law of this case.

Both parties responded somewhat belatedly to our Order of January 9, 1987. The Debtor did not file her Second Modified Plan until January 21, 1987, and the hearings on that date were continued by agreement, per an Order of January 23, 1987, until February 18, 1987. On January 20, 1987, the Mortgagee filed a Motion for Relief from the Automatic Stay and a request for an expedited hearing, and we scheduled that hearing also on February 18, 1987. On February 9, 1987, the Mortgagee filed Objections to confirmation of the Second Modified Plan.

On February 18, 1987, the parties advised us that the Mortgagee had not prop-erly served its Motions and we continued the hearing on these matters, by agreement once again, until March 5, 1987, advising the Debtor to consider further Plan amendments to meet certain Objections raised by the Mortgagee. On February 20, 1987, the Debtor filed a Third Modified Chapter 13 Plan. On March 2, 1987, the Mortgagee responded with a series of Objections to this most recent version of the Debtor's Plan.

Brief testimony was adduced on March 5, 1987, from Joseph O'Connor, the Mortgagee's foreclosure manager; the Debtor; and Kenny, who revealed that, the day before, he had filed his own Chapter 13 case, at 87–01064S. Mr. O'Connor presented copies of the Mortgage and documents, establishing that the Mortgagee had paid both the taxes on the premises, amounting to about $340.00 annually, each year through 1986, and also insurance on the property through January, 1988, remitting $145.20 for fire and extended coverage to an insurer on or about January 27, 1987. His records also indicated that the Debtor and Kenny had made but four of the monthly mortgage payments of approximately $157.00 monthly over the entire course of the mortgage loan, from January, 1984, through April, 1984.

The Debtor testified regarding her current income and expenditures. It appears that her wages have been reduced slightly (to $131.00 weekly or $563.30 monthly, as opposed to $577.64),[2] and that her support from Mr. Kenny is but $430.00 monthly, totalling $993.30, as opposed to the figure of $1,077.64 monthly set forth on her Chapter 13 Statement, filed on January 17, 1986.

The expenditures set forth in the Debtor's Statement of January 17, 1986, while for the most part modest for a woman with two children under three years of age, were attacked as overstated by the Mortgagee in two areas: (1) They included a "Rent or home mortgage" payment entry of $209.78, which the Debtor has neither

**2.** All weekly expenditures are converted by us into monthly expenditures by multiplying the weekly figures by 4.3.

made nor intends to make; and (2) They included $140.00 for "child care," and the Debtor testified that her babysitting expenses are presently $86.00 monthly. With respect to the latter, we note that the Debtor testified that the $140.00 "child care" was intended to contemplate only expenses for diapers and other incidentals for her one-year-old and two-year-old children, and we do not consider $140.00 in the least bit excessive for such expenditures. Hence, the $86.00 for babysitting represents an item which is additional to the expenses set forth on the Statement. In the first area, however, the Mortgagee has made a legitimate point, and we are required to discuss this issue in more detail below.

The Mortgagee's Objections to confirmation, which we shall consider first, are as follows:

1. The Debtor's Plan impermissibly modifies the Mortgagee's rights, in violations of 11 U.S.C. §§ 1322(b)(2) and (b)(5), thereby barring confirmation pursuant to 11 U.S.C. § 1325(a)(1).

2. The Debtor's proposed distribution of $2,973.63 to the Mortgagee is an insufficient allowance on its claim, in violation of 11 U.S.C. § 1325(a)(5)(B).

3. The Debtor is not submitting all of her projected disposable income for a three-year period, as required by 11 U.S.C. § 1325(b)(1)(B).

4. The Debtor's Plan impermissibly requires the Mortgagee to issue a satisfaction piece to her upon completion of her payments under the Plan.

5. The Plan impermissibly bars the Mortgagee from pursuing her co-debtor, Kenny.

We will dispose of the latter two Objections briefly at the outset. These relate to provisions of paragraphs 15 and 6 of the Debtor's Second Modified Plan, incorporated into her Third Modified Plan, which state, respectively, as follows:

6. By failing to object to this plan, or any modification thereof all creditors holding claims agree not to make any

effort to collect their claims from any cosigners that may exist, so long as this case remains pending. However, any creditor may pursue a cosigner pursuant to applicable bankruptcy law.

. . . . .

15. The debtor shall pay to Boulevard Mortgage Company through her plan and solely through her plan the sum of money which shall be determined in *Crompton v. Boulevard Mortgage Company* (*In re Crompton*) [68 B.R. 831], to be the allowed secured claim of Boulevard Mortgage Company (hereinafter "Boulevard"). Said sum shall be accepted in full satisfaction of any security interest in the Debtor's residence of which Boulevard or its successor or assigns may be a holder, and Boulevard, upon completion of this Plan, shall provide to the debtor a mortgage satisfaction piece or a release of mortgage, which shall satisfy the interest of Boulevard Mortgage Company in the one-half interest of the debtor Linda Crompton in her residence at 129 E. Willard Street, Philadelphia, Pennsylvania.

■■■ We believe that the Mortgagee's Objections are well-taken because, as a general principle, we do not believe that a debtor should include, in a Plan, protections and rights not expressly provided for in the Code over the objection of an interested party. There is nothing in the Code requiring secured parties to issue documentation removing a security interest upon the debtor's making Plan payments, as the last sentence of paragraph 15 would require. Whether the Debtor has a right to receive such performance is, moreover, open to at least some question. She may, as the Mortgagee intends, remain liable as a co-obligor as to the portion of Kenny's interest in the premises which is secured. In any event, this issue presents a somewhat problematical question of state law, and hence there is a question as to whether such a provision, even if allowed to remain, would be enforceable.[3]

---

3. We do not agree, however, with the reasoning of the Mortgagee on this point to the extent that

it implies that the mortgage remains a valid secured debt as to the Debtor after payment of

■ Similarly, there is no right of a debtor to prevent a creditor from proceeding against a co-debtor as a condition of a Plan, as paragraph 6 provides, and authority is split as to whether such a provision is, in any event, enforceable. *Compare In re Rolland,* 20 B.R. 931, 933 (Bankr.W.D.N.Y. 1982) (not enforceable); *with In re Britts,* 18 B.R. 203, 207 (Bankr.N.D.Ohio 1982) (enforceable only as to creditor who expressly adopts plan); *and In re Weaver,* 8 B.R. 803, 805–06 (Bankr.S.D.Ohio 1981) (enforceable). We are loath to approve a Plan which includes provisions of such questionable enforceability.[4] Therefore, we shall sustain these Objections and direct the Debtor to delete them if she wishes to present us with a confirmable Plan.

The three remaining Objections require more extended discussion. Analysis of the first Objection requires us to consider 11 U.S.C. §§ 1322(b)(2) and (b)(5), which provide as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ...

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...

As the Mortgagee concedes, the discussion of this issue in *In re Jablonski,* 70 B.R. 381, 385–86 (Bankr.E.D.Pa.1987), resolves the issue of whether the Debtor's Plan to pay only the $2,500.00 secured portion of her debt to the Mortgagee violates § 1322(b)(2) in the Debtor's favor. Except for noting an additional decision from our neighboring court in New Jersey, *In re Hynson,* 66 B.R. 246 (Bankr.D.N.J.1986), which, following a similar ruling of that court in *In re Smith,* 63 B.R. 15, 16 (Bankr. D.N.J.1986), reaches a contrary conclusion, we know of no reason for receding from our decision in *Jablonski.* We continue to believe that we should follow the authority established in this Court by the several decisions of former Chief Judge Emil F. Goldhaber, as opposed to the New Jersey decisions which appear to the contrary, both for the sake of consistency and because we believe that our Court's decisions are correct.

■ We will not repeat our complete reasoning on this point, since it is set forth at length in *Jablonski.* We note that the Mortgage in issue here, like the *Jablonski* mortgage and apparently distinct from those at issue in *Smith* and *Hynson,* includes security in "appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereinafter installed in or upon said premises," as well as "Rents, Issues and Profits" of the premises. Clearly, then, this mortgage is not a claim secured *only* by the Debtor's residence, as is required to bring

its entire secured claim against her is satisfied. Our uncertainty arises from the type of estate which she and Kenny have in the property *inter se, i.e.,* joint tenancy or tenants in common. Had Kenny not filed bankruptcy, the entire balance of the mortgage would have remained a secured debt as to him, and evaluation of the Mortgagee's secured interest in Kenny's estate, per 11 U.S.C. §§ 502, 506, has not yet occurred. There is no evidence to support the Debtor's assertion, in her Brief, that she owns the premises with Kenny as a tenant in common, and hence that their interests are severable. In fact, in our previous Opinion, we loosely referred to the Debtor as a joint tenant, and they may own the property as joint tenants. It may also be that the disposition of Kenny's bankruptcy will be relevant to these issues, and, since the disposition there is uncertain, the rights of the parties may not be totally clear until his case is completed.

4. We do not agree with the Debtor's assertion that Kenny's filing renders this issue moot. If the Mortgagee obtains relief from the stay imposed by Kenny's Bankruptcy, or that case is dismissed, approval of this Plan provision might still protect Kenny. We see no reason why Kenny is entitled to such protection as an element of the Debtor's Plan, at least over the Mortgagee's Objection.

11 U.S.C. § 1322(b)(2) into play. We do not agree with the Mortgagee that *only* fixtures are taken as security in this document, since the Mortgage asserts on its face that it includes security in items such as appliances and furniture, which do not appear to be fixtures, and expressly states that security of such items is taken whether such items are fixtures *or not.* Further, it is not significant that the Mortgagee has, to date, not filed any financing statements to perfect the security interests which the Mortgage allows it to take in the Debtor's personalty. Most security interests are not valid until recorded. Few, if any, are recorded prior to or simultaneously with the signing of a security agreement. The only significant factor is that the secured party, in the secured document, is empowered to do so at any time after execution of the security agreement. It is likewise totally irrelevant to consider that such clauses are common and may exclude many mortgages from the scope of § 1322(b)(2). Certainly, the presence of such clauses is not the doing of any party but the lender and cannot be a legitimate concern of the Court. *Cf. In re Johnson-Allen,* 67 B.R. 968, 972–73 (Bankr.E.D.Pa.1986).

There is, furthermore, another reason why we believe that the reasoning of *Jablonski* is correct and should be applied here. The Plan is not actually modifying any valid rights which the Mortgagee has as a secured party. The Mortgagee, as we have determined, only *has* a valid $2,500.00 secured claim against the Debtor. We are not allowing the Debtor to change this fact and reduce the portion of the debt which is legitimately secured by the means of her Plan. It appears to us that it is only a modification of a *valid* security interest, unlike any claim of the Mortgagee in excess of $2,500.00 against the estate of the Debtor, which is prohibited by § 1322(b)(2).

We therefore reiterate our rejection of the Mortgagee's contention that we should reverse the precedent established in numerous decisions in this Court, and we find that the Debtor's Plan is not violative of § 1322(b)(2).

The Mortgagee's second contention arises from 11 U.S.C. § 1325(a)(5), which provides as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . . .

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; . . .

Clearly, the Mortgagee has not accepted the Plan, nor has the Debtor surrendered the property, eliminating the possibility that §§ 1325(a)(5)(A) or (C) apply here. Thus, the Debtor must satisfy both conditions of § 1325(a)(5)(B) to meet this requirement. The Debtor proposes that the Mortgagee will retain its lien until the secured portion of the claim is liquidated at the end of the Debtor's Plan, satisfying § 1325(a)(5)(B)(i). The question presented is whether the value of the property which the Debtor will distribute to the Mortgagee under the Plan "is not less than the allowed amount of such claim," and hence satisfies § 1325(a)(5)(B)(ii).

This Court has already determined that the value of the Mortgagee's secured claim is $2,500.00, as of January 9, 1987. As we indicated in that Opinion, we are attempting to bring the confirmation of the Plan to a head imminently to assure ourselves that this value will not be changed by the crucial effective date of the Plan, i.e., the date of confirmation. 68 B.R. at 835. The Debtor's Plan, although less than clear on this point and, therefore, we think, requiring further clarification, apparently contemplates payments of $96.57 for thirteen (13) months from January, 1986, through January, 1987, which totals $1,255.41, and

twenty-two (22) payments of $78.10 from February, 1987, through November, 1988, which totals an additional $1,718.22, which thus would make the total Plan payments $2,973.63.[5]

The Plan does not, as far as we can tell, address the issue of when distribution will be made to the Mortgagee. The Debtor's Brief states, without any apparent reference in the Plan, that "[t]he sum of $1,218.33 will be sent to Boulevard upon confirmation." Apparently, the Debtor contemplates that a portion of the sum paid to the Trustee will be distributed upon or shortly after the date of confirmation. A provision in the Plan and a court order, upon Application by the Debtor, allowing such distribution are prerequisites, however, to these events actually transpiring. It is also unclear to the Court how, in any event, the sum of *$1,218.33* was calculated.

In any event, it is clear that the Debtor does not contemplate payment of the entire secured claim of the Mortgagee in full on the date of confirmation, but rather contemplates deferred payments on its secured claim, at least in part. It is clear that, when such a deferral of payments of an allowed secured claim is contemplated, it is necessary that the Debtor "propose interest payments over and above the face amount of the allowed secured claim at whatever interest rate is equivalent to the discount rate selected by the Court or agreed upon by the parties." 5 COLLIER ON BANKRUPTCY, ¶ 1325.06[4][iii][B], at 1325-37 (15th ed. 1986).[6] The weight of authority establishes that the discount or interest rate selected should be the "market rate of interest." *See, e.g., In re Paul,*

62 B.R. 269, 70-71 (Bankr.D.Neb.1986); *In re Mothershed,* 62 B.R. 113, 114 (Bankr.E. D.Ark.1986), and *In re Mitchell,* 39 B.R. 696, 700-02 (Bankr.D.Ore.1984).

■ The Mortgagee, although invoking the concept set forth herein, inexplicably concludes that it "must be paid at least $3,600.00." We do not agree that the sum to be paid would be this high. Although we note that the mortgage provides for interest at the rate of thirteen (13%) percent, we believe that the drop in the interest rates since the inception of this loan justifies the use of a "market" interest rate of ten (10%) percent, which the Pennsylvania Secretary of Banking advises us is the maximum lawful rate for mortgage interest rates for May, 1987, pursuant to 41 P.S. § 301(c), and which we thus find is the appropriate market rate of interest for mortgages in Philadelphia at this time. Assuming that the Debtor amends her Plan and obtains a court order allowing the Trustee to distribute a sum of approximately half of the $2,500.00, or $1,250.00, in his hands at or about the date of confirmation, the Plan would have to provide interest on deferral of payment of roughly an additional $1,250.00 over approximately eighteen (18) monthly installments. It would appear that the total of payments necessary to accomplish this result would require additional interest payments of only about $100.00, or a total payment of about $2,600.00 to the Mortgage. Payment of this sum seems clearly within the Debtor's reach, and therefore, assuming that she will make the adjustments to her Plan which we deem here are necessary, we

---

5. Paragraph three of the Debtor's Plan states as follows:

> (3) The debtor shall submit to the supervision and control of the trustee the sum of $2,973.63 in 13 monthly installments from January, 1986, to January, 1987 inclusive; and in 22 installments of $78.10 each during the months from February, 1987 to November, 1988 inclusive. The debtor shall also pay to the trustee one payment of $10.00 to establish a computerized account.

6. This issue is distinct from that presented by such cases as *In re Rice,* —— B.R. ——, C.A. No. 87-1235 (E.D.Pa., Order filed April 23, 1987); *In re Capps,* 71 B.R. 592 (E.D.Pa.1987) (per GILES,

J.); *In re Harmon,* 72 B.R. 458, 461-62 (Bankr. E.D.Pa.1987) (per TWARDOWSKI, CH. J.); *In re Fries,* 68 B.R. 676, 681-82 (Bankr.E.D.Pa.1986) (per FOX, J.); and *In re Small,* 65 B.R. 686, (Bankr.E.D.Pa.1986) (per SCHOLL, J.), which have consistently held that a mortgagee cannot demand interest on *arrears.* As we indicated in *Small,* § 1325(a)(5)(B) concerns payment of the value of the mortgagee's "claim," which is distinct from "arrears," and hence is not pertinent to that analysis. 65 B.R. at 690. However, here, since the Debtor contemplates payment of the Mortgagee's entire claim, § 1325(a)(5)(B) certainly is pertinent—and controlling.

believe that she will be able to satisfy the criteria of § 1325(a)(5)(B).

The final Objection raised by the Mortgagee arises from 11 U.S.C. § 1325(b), which provides as follows:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation and operation of such business.

█ While the Mortgagee is a partially-secured claimant, we agree with the Mortgagee that such a creditor is within the scope of the definition of a "holder of an allowed unsecured claim" having standing to raise a § 1325(b)(1)(B) objection.

Initially, we note that the Debtor contemplates only thirty-five payments. It is clear that § 1325(b)(1)(B) requires payments to be made for a full three-year period, and hence for at least thirty-six months. Therefore, the Debtor is obliged to amend her Plan to include a payment in the month of December, 1988.

We further note that, in discussing the impact of this provision, Collier suggests that, rather than engaging in hopeless speculation about the future, the court should focus upon the present monthly in-come and expenditures of the Debtor and, unless extraordinary circumstances are present, project these over the life of the Plan. See 5 COLLIER, *supra*, ¶ 1325.-08[4][a], [b], at 1325–47 to 1325–48. We shall follow this common-sense advice, focusing upon the testimony of the Debtor presented at the hearing on March 5, 1987, which incorporated by reference her Statement of income and expenses prepared a year before, on January 17, 1986.

We have discussed the testimony presented by the Debtor on this point at pages 803–804 *supra*. We calculated the Debtor's income at $993.30 and indicated that we would accept, as modest, all of her figures which she set forth on her original Statements of Expenditures filed on January 17, 1986, with an upward adjustment for $86.00 in babysitting expenses, but with some necessary adjustments to the $209.78 figure for "rent or home mortgage payment," as the Debtor's only payments for such housing costs will be those made through the Plan.

The Mortgagee suggests that this sum of $209.78 must be deleted entirely. However, since at pages 810–811 of this Opinion *infra*, we are requiring Kenny and the Debtor to reimburse the Mortgagee for the 1987 insurance payment of $145.20, and, beginning in 1987, requiring them to pay the real estate taxes of approximately $340.00 annually, this will impose an additional annual cost of about $458.00 on the Debtor and Kenny, of which we will assume that the Debtor will pay half, and which adds an additional amount of approximately $20.00 monthly to her expenditures. Thus, we calculate the Debtor's monthly expenses to total $799.00. Deducting this sum from her monthly income of $993.20 leaves an excess of $194.20.

█ The allocation of the relative burdens of proof of the Debtor and the creditor raising a § 1325(b)(1)(B) objection is addressed by Judge Fox of this Court in *In re Fries*, 68 B.R. 676, 682–85 (Bankr.E.D. Pa.1986), and, to a lesser extent, by us in *In re Gathright*, 67 B.R. 384, 391–92 & n. 8 (Bankr.E.D.Pa.1986), *appeal dismissed*,

71 B.R. 343 (E.D.Pa., 1987). We believe that the objecting party, to succeed, must either present *some* evidence or, in egregious cases, point out to us a situation which represents a clear abuse on its face. However, if such an objection is so raised and supported by evidence on the record, then the burden shifts to the Debtor, as the party with most access to proof on the point, to show that the budget submitted is reasonable and that the objection lacks merit. *Cf. In re Furlow,* 70 B.R. 973, 977–78 (Bankr.E.D.Pa.1987).

Collier strongly suggests that the Debtor should not be required to pay *all* of her excess income to the Trustee, stating as follows:

> It is also clear from the legislative history that the amount necessary for support of the debtor and the debtor's dependents must include a "cushion" for unexpected expenses. Many courts, in considering whether a plan is feasible ... have noted that a realistic budget must include some margin for such expenses. 5 COLLIER, *supra,* ¶ 1325.-08[4][b], at 1325–49.

While we are unwilling to set down a rule that a debtor must always provide such a "cushion" in a Plan, we will give some leeway to a debtor who, like the Debtor here, provides for no cushion, especially since she has two very young children who are dependent upon her, and hence there appears a strong likelihood that a need for a "contingency fund" will arise.

■ We also note that the Debtor's budget includes *no* luxuries, Spartan allowances for food, utilities, transportation, and recreation, and no budget for such apparent necessities as home repairs, a newspaper subscription, or any sort of life insurance. We are thus extremely uncomfortable about the prospect of compelling the Debtor to pay more than the $96.57 which she paid through January, 1987, which leaves a balance of what we consider a minimal amount of $97.63 for the items for which no expenditures are listed and a small cushion.

We are however, compelled to observe that, to her credit, the Debtor faithfully paid this $96.57 sum to the Trustee through January, 1987. Given that the ultimate burden of proof is upon the Debtor to show that her budget is reasonable, and that a downward change such as that proposed in her Plan is in order, we must conclude that she is able to and must be compelled to continue to pay $96.57 after January, 1987, to meet the requirement of § 1325(b)(1)(B).

Concluding that we shall compel the Debtor to amend her Plan to continue to pay $96.57 from January, 1987, through December, 1988, we note that this will require her to submit a total sum of $3,476.52 to the Trustee, which should be easily sufficient to meet the Mortgagee's demands under § 1325(a)(5)(B), the Trustee's commissions, and allow a modest dividend on unsecured claims. We also observe that these requisite modifications, which we will collect in an accompanying Order, are relatively modest and appear to be within the realistic grasp of the Debtor to accomplish.

With this backdrop, we consider whether the Mortgagee is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d), which provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>> (1) for cause, including lack of adequate protection of an interest in property of such party in interest; or
>>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>>
>>> (A) the debtor does not have an equity in such property; and
>>>
>>> (B) such property is not necessary to an effective reorganization.

■ The Mortgagee devotes most of its energies to arguing that the Debtor's failure to make payments on the mortgage since April, 1984, constitutes, *per se,* a basis for relief from the automatic stay under § 362(d)(1). Like, apparently, our prede-

cessor, the Honorable William A. King, Jr., who dismissed a prior Motion of the Mortgagee pursuant to 11 U.S.C. § 362 on June 25, 1986, we do not agree.

As we pointed out at some length in *In re Grant Broadcasting of Philadelphia, Inc. (First Opinion)*, 71 B.R. 376, 384–89 (Bankr.E.D.Pa.1987), and recently reiterated in a consumer context in *In re Tashjian*, 72 B.R. 968, 973 (Bankr.E.D.Pa.1987):

> we believe that determination of whether a secured lender receives "adequate protection" from a debtor requires an analysis of all of the relevant facts, with a particular focus upon the value of the collateral, the likelihood that it will depreciate or appreciate over time, the prospects for successful reorganization of the Debtor's affairs by means of the Plan, and the Debtor's performance in accordance with the Plan. While of course the last element requires some analysis of the Debtor's payment performance, this element should not be isolated from the other elements and utilized alone as a basis to deprive a debtor of one of the most valuable tools with which the bankruptcy filing equips him or her [the automatic stay].

Significant in the instant case are the facts, as is suggested are most relevant in the above quote, that the Debtor appears quite capable of putting together and performing pursuant to a reorganization Plan which will totally protect the Mortgagee's security interest, and the Debtor's track record of payments to the Trustee under her Plan.

We do not find this conclusion in the least bit inconsistent with the results in the cases cited by the Mortgagee, *In re Ram Mfg. Inc.*, 32 B.R. 969 (Bankr.E.D.Pa.1983) per GOLDHABER, CH. J.); *In re Winslow Center Associates*, 32 B.R. 685 (Bankr.E.D. Pa.1983) (per GOLDHABER, CH. J.); and *In re Kane*, 27 B.R. 902 (Bankr.M.D.Pa. 1983) (per GIBBONS, J.). In *Ram*, relief from the stay was granted because the Debtor had ceased doing business, had not proposed a plan, and suggested that a plan could be funded only by the risky prospect of collections on accounts receivable and

pending lawsuits. 32 B.R. at 971, 972. In *Winslow Center*, relief was granted due to the Debtor's failure to make any post-petition payments to any source, which had eroded the moving party's security. 32 B.R. at 688. In *Kane*, the court denied the moving party the stay relief from stay sought despite the debtors' poor payment history, solely because the debtor had an equity cushion. 27 B.R. at 905, 906.

Here, the Debtor appears both able and willing to make payments sufficient to protect the Mortgagee's deflated security interest in the premises, which we reiterate, as we found in our earlier Opinion in this case, was due to the presence of hidden defects in the home rather than its waste by the Debtor or Kenny. 68 B.R. at 833, Finding of Fact 3. We find generally much more analogous the holding in *Kane*, described *supra*, which is supported by an Opinion of present Court of Appeals Judge Walter K. Stapleton, sitting as a district judge, in *In re Adams*, 27 B.R. 582 (D.Del. 1983), where it was found that a Debtor's large equity cushion precluded stay-relief despite the Debtor's failure to make any post-petition payments to a mortgagee.

We do, however, believe that one aspect of the Mortgagee's Motion has merit. We can perceive no equitable basis for compelling the Mortgagee to continue to bear the costs of insuring and paying the taxes on the premises. *See In re Stagedoor, Inc.*, 32 B.R. 13 (Bankr.W.D.Pa.1983) (per WASHABAUGH, J.) (Debtor's default in payments of insurance give rise to stay relief). We have previously indicated that we believe that the Mortgagee waived any secured claim on the basis of its payment of insurance and taxes through the date of the hearing in the adversarial case, conducted on November 5, 1986, by failing to present any evidence or argument on this issue prior to our previous decision. However, we can conceive of no legal or equitable reason why the Mortgagee should be compelled to subsidize the Debtor and Kenny as to these necessary costs of preserving their home thereafter. We therefore shall require the Debtor (or Kenny) to compensate the Mortgagee for the $145.20

already expended for insurance since the November 5, 1986, hearing and to either reimburse the Mortgagee, if it has paid same, or, if not, to themselves pay all of the 1987 real estate taxes on or before August 31, 1987, and to arrange for or reimburse the Mortgagee for all such future expenses. Only upon our assurance that such payments are made could we deem the Mortgagee adequately protected, per § 362(d)(1).

The Mortgagee also contends that it is entitled to relief from the automatic stay on the basis of § 362(d)(2). We note that there has been substantial diversity in the court decisions regarding not only the application, but the applicability, of § 362(d)(2) as a basis for granting relief from the automatic stay as to a Chapter 13 debtor filing a bankruptcy petition principally to save a mortgaged residence.

Several well-reasoned cases, including a decision by former Bankruptcy Judge William L. Norton, Jr., Author and Editor-in-Chief of a respected bankruptcy treatise, have held that "[t]he absence of the use of the term 'reorganization' anywhere except in Chapter 11 leads the court to the conclusion that its use in § 362(d)(2)(B) makes § 362(d)(2) applicable only to Chapter 11 Reorganization cases; and not applicable to Chapter 13 cases." *In re Feimster*, 3 B.R. 11, 14 (Bankr.N.D.Ga.1979). *See e.g., In re Garner*, 13 B.R. 799, 803–04 (Bankr.S.D.N.Y.1981) (application of § 362(d)(2)(B) held inconsistent with Chapter 13 purpose of retaining consumer assets as opposed to Chapter 11 purpose of utilizing assets to generate income).

Another reasoning process is developed in *Grundy Nat'l Bank v. Stiltner*, 58 B.R. 593, 596 n. 1 (W.D.Va.1986), where a district court, affirming the bankruptcy court, holds that there is an "irrebuttable presumption ... in a Chapter 13 case as to the debtor's home as necessary to effective reorganization where the debtor's primary purpose in filing the Chapter 13 petition is to save his home." *See also, e.g., In re Smithfield Estates, Inc.*, 48 B.R. 910, 913 (Bankr.D.R.I.1985); and *In re Cabe, Inc.*,

41 B.R. 222, 223–24 (Bankr.M.D.Tenn.1984).

There is little question that the Mortgagee here meets the § 362(d)(2)(A) requirement of establishing a lack of the Debtor's equity in her home. The mortgage balance far exceeds the value of the home, and it is this very element of lack of equity which reduced the Mortgagee's secured claim to $2,500.00. However, we do not believe that the Mortgagee could meet its burden of proving that the Debtor's home is not necessary to the effective "reorganization" of her affairs, even if the reasoning of Judge Norton, *et al.*, is rejected, and reasoning similar to that applicable to a § 362(d)(2)(B) analysis in a Chapter 11 case is applied.

As Collier points out, the presence of an effective rehabilitative plan, i.e., a realistic plan other than a liquidation which the Debtor is fulfilling, satisfies the § 362(d)(2)(B) requirement. 2 COLLIER, *supra*, ¶ 362.07, at 362–70 to 362–71. As the Opinions of Judge Fox of this Court in *In re Paolino*, 72 B.R. 555, 559 (Bankr.E.D.Pa.1987); and *In re 6200 Ridge, Inc.*, 69 B.R. 837, 842–43 (Bankr.E.D.Pa.1987), establish, the "successful reorganization" test is not rigorous and is met by merely demonstrating " 'a reasonable probability that [the debtor] will be able to propose a plan for a successful reorganization within a reasonable time....' "

We note the presence of a few decisions which focus upon the debtor's prospects of obtaining comparable housing more cheaply elsewhere in making an analysis of whether averting a foreclosure on a home is *necessary* to the debtor's successful reorganization. *See, e.g., In re Gregory*, 39 B.R. 405, 411–12 (Bankr.M.D.Tenn.1984) (Chapter 11 consumer case); and *In re Gardner*, 14 B.R. 455, 456 (Bankr.E.D.Pa.1981). We would respectfully submit that, in a Chapter 13 case, such a reasoning should not be utilized to conclude that § 362(d)(2)(B) is not satisfied. A debtor's desire to retain a particular, unique home may be a great source of personal satisfaction and a foreclosure may preclude future home ownership, which are significant human values regarding which we submit that a bankruptcy court should be loath to

second-guess a debtor.  However, we can conceive of circumstances where a debtor's inability to obtain comparably priced housing could properly be a factor utilized to find that the § 362(d)(2)(B) requirement is not met in a particular case.

■ In the instant case, we have already noted that a confirmable Plan is well within the realistic grasp of the Debtor here to accomplish.  On this basis alone, we hold that the Mortgagee is unable to meet the criteria of § 362(d)(2)(B).  We must further note, however, that it is clear that the Debtor could not obtain comparable housing for less than the $96.57 per month which she must pay to retain the home in question.  Although this house may be in terrible shape, it is an unfortunate fact that such a residence is highly preferable to the prospect of homelessness which faces many indigent citizens of our City and with which the Debtor could be threatened if her relationship with Kenny, not cemented by marriage, dissolved.

In our Order accompanying this Opinion, we shall therefore deny the Mortgagee's Motion pursuant to § 362(d), with the proviso that the Debtor or Kenny must reimburse the Mortgagee for the insurance purchased and pay the real estate taxes due on or before August 31, 1987.