In re Catherine Duffy PETIT, Debtor.

Bankruptcy No. 93–20821.

United States Bankruptcy Court,
D. Maine.

Jan. 19, 1995.

Stephen F. Gordon, Gordon & Wise, Boston, MA, for debtor.

U. Charles Remmel II, Kelly, Remmel & Zimmerman, Portland, ME, for P & M Associates, Inc.

Office of the U.S. Atty., Gerrard Kelley, Portland, ME.

### ORDER GRANTING RELIEF FROM STAY

ARTHUR N. VOTOLATO, Bankruptcy Judge.*

On November 18, 1994, a "final hearing" was held on P & M Associates' Motion for Relief from the automatic stay.[1] Upon consideration of the evidence, the applicable law, and the arguments of counsel, we make the following findings and conclusions:

### TRAVEL

1) On August 6, 1984, Catherine Duffy Petit executed a mortgage and note in the amount of $125,000 payable to BY Corporation.

2) The mortgage covered Petit's real estate located at One Fourth Avenue, Old Orchard Beach, Maine.

3) On November 10, 1988, the mortgage was assigned to LAGK, Inc., and on the same day, LAGK assigned the mortgage to P & M Associates.

4) Barbara York was the sole owner, president, treasurer, and director of both LAGK, Inc. and BY Corp.

5) On June 4, 1993, an involuntary Chapter 7 petition was filed against Petit, and on December 10, 1993, after hearing, Petit's Objection to the Involuntary Petition was Overruled, and the Order for Relief was entered.

6) The Debtor immediately moved to convert the case to one under Chapter 11, and

---

* For the District of Rhode Island, sitting by designation.

1. *See* 11 U.S.C. § 362(e).

on February 8, 1994, the motion was granted. On April 9, 1994, after another contested hearing, an order was entered authorizing the appointment of a Chapter 11 Trustee, over the Debtor's objection.

7) On October 13, 1994, P & M Associates filed a Motion for Relief from Stay, and for leave to continue its foreclosure proceeding then pending in the York County District Court.

8) On October 26, 1994, we held a preliminary hearing on the Debtor's objection to P & M Associates' Motion for Relief from Stay, and ordered that the stay remain in effect until the conclusion of the Final Hearing.

### DISCUSSION, CONCLUSIONS, AND FINDINGS

The Movant has the burden of establishing lack of equity in the subject property, 11 U.S.C. § 362(d)(2), while the Debtor has the burden to show that the property is necessary for an effective reorganization. *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988); *In re Swansea Consol. Resources, Inc.*, 127 B.R. 1, 2 (Bankr.D.R.I.1991); *In re Pelham Street Assocs.*, 131 B.R. 260, 262–63 (Bankr. D.R.I.1991). More specifically, the Debtor must establish that "the property is *essential* for an effective reorganization *that is in prospect.*" *Timbers*, 484 U.S. at 376, 108 S.Ct. at 632 (first emphasis added).

The Debtor challenges the validity of the claim of P & M Associates on many grounds, contending, *inter alia*, that on the date of the execution of the note and mortgage in favor of BY Corp., she did not receive $125,000. She also argues that Barbara York and her husband loaned her various sums of money over the years, but does not know if BY Corp. ever advanced any money under the note in question. She also contends that payments were made by her, and by others

on her behalf, to the Yorks; however, she is unsure of the amount of the payments, or who made them, or how or when they were applied, and she produced no records of any kind to support her testimony. She testified that the Yorks kept all payment records and that she has no records in her possession.

The Debtor's testimony is neither plausible nor credible, and contradicts other statements she has made under oath. In a deposition taken on May 7, 8, and 9, 1990, the Debtor acknowledged the $125,000 debt and the fact that she had made no payments on the obligation. (*See* Plaintiff's Ex. 7.) Furthermore, Mrs. York states in her deposition that she recalls that there was $100,000 or more owed on the note to BY Corp., that to her knowledge there is no record of any payments made under the note, and she does not recall any payments ever having been made. (*See* Deposition of Barbara York, November 14, 1994, Plaintiff's Ex. 26, at 10–11.) Based upon the evidence presented, we find that P & M Associates has clearly demonstrated "a reasonable likelihood that it has a meritorious claim" to property of the estate. *Grella v. Salem Five Cent Savs. Bank*, 42 F.3d 26, 34 (1st Cir.1994).

We also find that the balance due under the note, including principal and interest, is $330,880. (Testimony of Jeffrey Weiner), and for the purpose of this hearing, we accept the Debtor's estimate of value of $260,-000,[2] and find that there is no equity in the subject property.

As for Petit's contention that the property is essential for an effective reorganization under 11 U.S.C. § 362(d)(2)(B), we find that she has not met that burden. The Debtor argues that by filing her plan (which is totally dependent on the successful outcome of the Key Bank litigation) she has therefore shown that an effective reorganization is in prospect.[3] She also urges us to follow *In re*

---

**2.** Typically in relief from stay litigation, debtors' estimates of the market value of their property is on the high side, and so we are comfortable with the finding of lack of equity.

**3.** The plan provides for monthly payments on the first mortgage consisting of principal and interest at 8½ percent, amortized over thirty years with a

five year balloon payment. The mortgage payments are to be made "by friends," who are not obligated on this funding arrangement. The balloon payment is to be funded by the expected Key Bank litigation proceeds, if and when they are received. While it is true that we are not addressing confirmation at this stage of the proceeding, we are not able to find, on the facts

*Crompton,* 73 B.R. 800 (Bankr.E.D.Pa.1987), wherein the Court stated that:

> A debtor's desire to retain a particular, unique home may be a great source of personal satisfaction and a foreclosure may preclude future home ownership, which are significant human values regarding which we submit that a bankruptcy court should be loath to second-guess a debtor.

*Id.* at 811–12. We have great difficulty with the notion that the court may elevate "a debtor's desire to enjoy the status of home ownership," above the rights of a secured creditor who has established the elements which, by statute,[5] entitle it to relief from stay. Also, *Crompton* is inapplicable because the facts are totally different. That case involved a *Chapter 13 debtor* who apparently satisfied the court that the economic advantage to remaining in the house with her two minor children was a significant element in her ability to fund the plan.[4] In the instant case, the property in question is *vacant,* and the Debtor is not attempting to rent or sell the property. She stays at the property occasionally, when she comes to Maine to visit her medical doctor. The Debtor also states that she plans to use the property to house her attorneys and witnesses when the Key Bank litigation is called for trial. This is another imaginative, but unpersuasive argument for which this Debtor is now well known.

Clearly, the subject property is not *necessary or essential* to a plan of reorganization that is in prospect, and the retention of this property by the Debtor is not justified either in law nor on the facts. To continue the stay would be a clear abuse of the Court's discretion.

Accordingly, P & M Associates' Motion for Relief from Stay is GRANTED. We will reserve decision on P & M's request for Rule 9011 sanctions against the Debtor until the close of this case, when we may better assess the overall behavior of the Debtor.

before us, that an effective reorganization is in prospect.

4. The value of the Debtor's one-half interest in the home was $2,500, and under her plan it

Enter Judgment consistent with this opinion.

would cost $96.57 per month for the Debtor and her children to live there—far less than the cost of any alternate housing. *Crompton,* 73 B.R. at 811–12.