**In re Ken KESSLER, Debtor.**

**Ken KESSLER, Plaintiff,**

v.

**MERRILL LYNCH MORTGAGE CORP., Defendant.**

**Bankruptcy No. 87–01418S.
Adv. No. 87–0434S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 22, 1987.

David Searles, Philadelphia, Pa., for debtor/plaintiff.

Lawrence T. Phelan, Philadelphia, Pa., for defendant.

Leslie Beth Baskin, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Presented to us herein are a Motion of the Debtor's Mortgagee, MERRILL LYNCH MORTGAGE CORP. (hereinafter referred to as "the Mortgagee"), for relief from the automatic stay (hereinafter referred to as "the Stay Motion") and the Debtor's Adversary Complaint, based upon 11 U.S.C. §§ 502(a), 506(a), (d) and the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. (hereinafter referred to as "TILA") (the Adversary Complaint is hereinafter referred to as "the Complaint"). In several similar circumstances, *see In re Mitchell, Mitchell v. Frankford Trust Co.,* 75 B.R. 593 (Bankr.E.D.Pa.1987); and *In re Crompton,* 73 B.R. 800 (Bankr.E.D.Pa. 1987), we denied similar Motions because we believed that the respective Debtors there had a reasonable probability of reorganizing and liquidating their mortgages, and thus we held that their respective Mortgagees' interests were adequately protected. On the other hand, here there is no such prospect. It is therefore clear that, even though we grant the Debtors all of the relief which they seek in the Complaint, we must grant the Stay Motion here.

The Debtors filed their bankruptcy petition under Chapter 7 of Title 11, U.S.Code, on March 24, 1987. On May 7, 1987, the Mortgagee filed the Stay Motion. The Complaint was initiated on May 12, 1987. After being continued by agreement of the parties on June 4, 1987, the Stay Motion was listed for a hearing on June 30, 1987, the date set for the trial on the Complaint. On June 30, 1987, the parties' counsel came before us and stipulated to several facts, set forth in the following paragraph, relevant to both matters.

The Debtors executed a mortgage in favor of the Mortgagee's assignor in the amount of $21,900.00 on August 1, 1980. The Debtors have made no mortgage payments since June, 1983. The Mortgagee's claim was approximately $30,000.00, and

the present fair market value of the Debtors' home, situated at 2242 Larue Street, Philadelphia, Pennsylvania 19137 (hereinafter referred to as "the premises"), is $23,000.00. The mortgage was guaranteed by the Veterans Administration (hereinafter referred to as "the VA").

The parties also stipulated that the Debtor's fianceé, Suzanne DiCaro, would testify, if called, that the Debtor had been steadily employed and receiving wages of $7.50 hourly, since November, 1986; that she herself had recently begun full-time work at $3.75 hourly; that a boarder paying $200.00 monthly had recently joined the household; and that, beginning in August, 1987, the Debtor would resume making double mortgage payments, a sum of $540.00 monthly. The TILA disclosure statement, dated July 30, 1980, and the mortgage in issue were admitted into evidence.

Perceiving that the issues were not complex, we directed the parties' counsel, as memorialized by an Order of July 1, 1987, to simultaneously file Briefs in support of their respective positions on or before July 10, 1987, and to deliver copies of same to our chambers on or before 4:30 P.M. on that date. We received a copy of the Debtor's Brief in the mail on July 13, 1987, and we received a letter from the Mortgagee's counsel on July 14, 1987, that he did not consider it necessary to file a Brief, and that he relied solely upon District Judge Green's Opinion in *In re Nefferdorf,* 71 B.R. 217 (E.D.Pa.1984). We deem the parties' untimely compliance with our Order irritating but minor, and the Mortgagee's failure to make a submission indicative of the perceived strength of its positions, not an abandonment of same.

As in the *Mitchell* matters, presented to us in a similar posture, we shall first consider the Complaint. The Debtor's TILA Complaint is based upon the failure of the disclosure statement to adequately set forth the security interest taken in the premises, in violation of the applicable former 15 U.S.C. § 1638(a)(1) and 12 C.F.R. § 226.8(b)(5). *See, e.g., In re Martin,* 72 B.R. 126, 127 (Bankr.E.D.Pa.1987); and *In*

*re Johnson-Allen,* 67 B.R. 968, 969–70 (Bankr.E.D.Pa.1986) ("old" version of TILA applies to contracts executed prior to October 1, 1982).

The disclosure statement recites the security taken in the transaction as follows:

13. Collateral. (a) The loan will be secured by a mortgage on real property located at:

2242 LARUE STREET
PHILADELPHIA, PA 19137

A copy of the mortgage or deed containing a complete description will be delivered to the Borrower(s) at the closing. (b) The loan will also be secured by a warrant may result in a lien against all real estate now owned or hereafter acquired by the Borrower(s). (c) The above mortgage may secure future advances and after acquired property may be subject to the above liens.

However, the Mortgage in fact indicates that the security interest taken in the transaction was as follows:

TOGETHER with all and singular the building, improvements, and fixtures on said premises, as well as all additions or improvements now or hereafter made to said premises, streets, alleys, passages, ways, waters, water courses, rights, liberties, privileges, hereditaments, and appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof, and in addition thereto the following described household appliances, which are, and shall be deemed to be, fixtures and a part of the realty, and are a portion of the security for the indebtedness herein mentioned, namely,

PLUMBING, COOKING, HEATING, LIGHTING FIXTURES, SYSTEMS, APPLIANCES, APPURTENANT FIXTURES OF EVERY KIND AND CHARACTER, INCLUDING SCREENS, SHADES, AWNINGS, RENEWALS OR REPLACEMENT THEREOF ATTACHED TO AND FORMING PART OF THE REAL ESTATE.

■ We are, therefore, faced with a disclosure statement and mortgage combination which is almost precisely the same as that considered by us in *Martin, supra,* 72 B.R. at 127–29. The statement is over-inclusive in stating that security may be taken in future advances and after-acquired property when it is not, but under-inclusive in failing to disclose the security actually taken in personalty. The result here must be the same as that in *Martin.* However, since only the Debtor and not his wife-co-mortgagor, Laura Kessler, is a party plaintiff in this proceeding, we can only award the Debtor a $1,000.00 recoupment offset against the mortgage balance. *See Johnson-Allen, supra,* 67 B.R. at 974–75.

We also believe that the stipulated facts indicate that the mortgage is undersecured and hence that the Debtor is entitled to a determination, per 11 U.S.C. § 506(a), that the Mortgagee's secured claim, putting aside the TILA violation, is only $23,000.00. *See In re Lopez, Lopez v. Beneficial Mutual Savings Bank,* 75 B.R. 961, 962–64 (Bankr.E.D.Pa.1987); and *In re Jablonski,* 70 B.R. 381, 384–88 (Bankr.E.D.Pa.1987).

■ In its letter of July 14, 1987, the Mortgagee suggested that the decision in *Nefferdorf, supra,* might command a different result than that rendered in the above cases, since this case, like *Nefferdorf,* is a Chapter 7 case. However, as we pointed out in *Jablonski,* 70 B.R. at 386, the 1984 amendment to § 506(d)(1) eviscerated the impact of *Nefferdorf* entirely. Further, in *Nefferdorf,* the District Court relied in part upon the observation that the Debtor had been discharged and consequently the creditor could foreclose, thus eliminating the interest of the Debtor's estate in the property. Where such facts are not present, as here, we see no distinction in the application of § 506(a) to Chapter 7 cases as well as to Chapter 13 cases. Chapter 5 of the Code, wherein § 506 is included, is equally applicable to cases instituted under any of the Code chapters. Thus, we hold that the Debtor may utilize § 506(a) to reduce the Mortgagee's secured claim to the value of the premises, i.e., $23,000.00, in this case. The $1,000.00

TILA recoupment penalty reduces the Mortgagee's secured claim further, to $22,-000.00. *See Jablonski, supra,* 70 B.R. at 390.

However, we part company with the Debtor when he suggests that, here, the Mortgagee has not established that it is entitled to relief from the automatic stay, per 11 U.S.C. § 362(d), which provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

■ It is true, as the Debtor states, that a failure to make mortgage payments does not, in and of itself, entitle the Mortgagee to relief pursuant to the Stay Motion. *See Crompton, supra,* 73 B.R. at 809–810; and *In re Tashjian,* 72 B.R. 968, 973–74 (Bankr. E.D.Pa.1987). However, we certainly did *not* state in those cases, nor did we mean to imply, that a failure to make payments—especially for as long as the four-year period in issue here—was not a substantial factor to be weighed in considering whether the Mortgagee is adequately protected, per § 362(d)(1), or whether the Debtor is likely to *effectively* reorganize, per § 362(d)(2)(B).

Rather, what we stated in *Crompton* and *Tashjian* was as follows:

As we pointed out at some length in *In re Grant Broadcasting of Philadelphia, Inc. (First Opinion),* 71 B.R. 376, [384–89] (Bankr.E.D.Pa.1987), and recently reit[e]rated in a consumer context in *In re Tashjian,* [72 B.R. at 973]:

"we believe that determination of whether a secured lender receives 'ade-

quate protection' from a debtor requires an analysis of all of the relevant factors, with a particular focus upon the value of the collateral, the likelihood that it will depreciate or appreciate over time, the prospects for successful reorganization of the Debtor's affairs by means of the Plan, and the Debtor's performance in accordance with the Plan. While of course the last element requires some analysis of the Debtor's payment performance, this element should not be isolated from the other elements and utilized alone as a basis to deprive a debtor of one of the most valuable tools with which the bankruptcy filing equip him or her [the automatic stay]."

Significant in the instant case are the facts, as is suggested are most relevant in the above quote, that the Debtor appears quite capable of putting together and performing pursuant to a reorganization Plan which will totally protect the Mortgagee's security interest, and the Debtor's track record of payments to the Trustee under her Plan. *Crompton, supra,* at 810.

■ We believe that it is a fair statement that, if a debtor has failed to make payments to his mortgagee, and is unable to articulate any particular circumstances which render the mortgagee adequately protected in spite of this fact, then relief from the automatic stay should follow. We might further state that the fact of non-payment alone, without *more* on the record, *will* generally result in our granting a motion for relief from the stay.

Here, the Debtor begins from a very poor starting point in attempting to convince us that the Mortgagee will be adequately protected despite his dismal payment history. His case was filed pursuant to Chapter 7. Therefore, unlike the Debtors in *Crompton* or *Mitchell,* there is no prospect of his proposing a Plan, much less his performing in accordance with a Plan as well. This is not to suggest that a Chapter 7 debtor could not provide adequate protection to a Mortgagee in the form of payments or some other form.

However, the absence of a Plan suggests that the Debtor lacks the financial ability and/or necessitous circumstances to cause him to attempt to make the Mortgagee whole, at least in the long run, and retain his home.

The Debtor also presents an extremely poor payment history, comparable to the Debtors in *Mitchell,* with an absence of any presentation of mitigating factors, like the Debtor in *Crompton,* who unknowingly purchased a home with hidden defects. This factor put the *Mitchell* Debtors on the cutting edge of the line between the granting and the denying of the stay motion filed against them. This Debtor, lacking the reasonable prospects for formulating a workable Plan which ultimately caused us to deny the stay motion in *Mitchell,* rather clearly falls on the other side of the cutting edge and, figuratively speaking, must perish.

■ The Debtor suggests that the fact that the mortgage is VA-guaranteed protects the Mortgagee. There is no question that such governmental mortgage insurance is a factor which may cushion a mortgagee's losses upon default and hence be considered in deciding whether to grant a motion for relief from the stay. *See, e.g., Commonwealth of Pennsylvania State Employees' Retirement Fund. v. Roane,* 14 B.R. 542 (E.D.Pa.1981); *In re Roselli,* 10 B.R. 65, 667 (Bankr.E.D.Pa.1981); and *In re DiBona,* 9 B.R. 21 (Bankr.E.D.Pa. 1981). However, there is no question that a mortgagee, even if the mortgage is governmentally-insured, is subject to *some* losses if foreclosure is necessary, and that these losses become greater over time, if foreclosure is delayed. Hence, we know of no case, and we refuse to hold, that the presence of governmental mortgage insurance alone, with only minimal addition adequate protection in terms of payments or a Plan, can constitute adequate protection.

The only thing which the Debtor offers, in addition to the governmental mortgage insurance, is double payments beginning in August, 1987. Clearly, when the Debtor has defaulted for four years, such a promise of payments, assuming the Debtor over-

comes our skepticism that he would *make* even these payments, comes as both too little and too late.

We therefore conclude that the Mortgagee is entitled to relief under § 362(d)(1) for "cause," because the Debtor has failed to provide adequate protection. We also find that the Debtor has no equity in the premises, since the Mortgagee is undersecured, *see Mitchell,* at 599; and *Crompton,* at 811, satisfying the requirement of § 362(d)(2)(A). Finally, the Debtor is not "reorganizing," under any definition of the term, and hence the requirement of § 362(d)(2)(B) is met, justifying relief pursuant to § 362(d)(2) as well.

Recognizing the weakness of his position, the Debtor makes one final plea. He notes his discharge will most likely be forthcoming in September, 1987. Then, he states that "[t]he creditor cannot start up with foreclosure proceedings before September anyway.... Thus, there is no point in any great hurry on the creditor's part." Memorandum in Support of Complaint to Determine Extent of Lien and in Opposition to Motion for Relief from Stay, at 4. Therefore, he suggests that he is asking for very little and such a small request should not be denied to him.

However, another way of viewing this argument is observing that it emphasizes that there is very little at stake for anyone in the Stay Motion, or, indeed, in the Complaint which was apparently pressed as an offensive in defense of the Stay Motion. We do not think that the Mortgagee should fail in its Stay Motion because it might shortly hereafter obtain the same relief in any event, whether we grant it relief or not. Many slip-ups can occur, in scheduling or other unforeseen developments, which would postpone the entry of a discharge. We further believe that it is the Debtor, who has brought what he admits is a relatively useless proceeding, tapping the scarce resources of our court by asking relief from it, who should be compelled to justify the purposes of his actions before we turn to grant him relief. It is very difficult for us to understand the effort put forth by the Debtor in support of his admit-tedly rather hopeless and essentially meaningless ends, and we cannot compliment him for it. Certainly, then, the fact that the practical effect is *de minimis* will not be utilized by us to deny or delay the Mortgagee in its quest for relief to which it is otherwise clearly entitled in its Stay Motion. A bankruptcy is a legitimate "delay tactic," because it assures a Debtor a "breathing spell." However, allowing delay for its own sake, for any length of time, when it is not morally or legally justified, will not be condoned by us.

An Order consistent with the results supported by this Opinion shall be promptly issued by us.

## ORDER

AND NOW, this 22nd day of July, 1987, after colloquy with Counsel on June 30, 1987, during which certain factual Stipulations were recited which the parties agreed would constitute the record for deciding the Motion of MERRILL LYNCH MORTGAGE CORP. (hereinafter referred to as "the Mortgagee") for Relief from Automatic Stay in the main case and on the merits in the above-captioned Adversary proceeding, and consideration of the Brief submitted by the Debtor and the letter submitted by the Mortgagee, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Debtor and against the Mortgagee on the Claims set forth in the Adversary Complaint, and the extent of the value of the Mortgagee in the Debtor's interest in his premises as 2242 Larue Street, Philadelphia, Pennsylvania, 19137 is hereby determined to be $22,000.00.

2. The Mortgagee's Motion for Relief from the Automatic Stay is GRANTED.

3. This Order shall be filed and docketed in both the above-captioned main case and Adversary proceeding.