In re **FOOD BARN STORES, INC., Debtor.**

**Bankruptcy No. 93–40012–2–11.**

United States Bankruptcy Court, W.D. Missouri.

Oct. 13, 1993.

Henry J. Kaim, Sheinfeld, Maley & Kay, Houston, TX, Larry Frazen, Bryan Cave, Kansas City, MO, for debtor.

James E. Bird, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for Prudential Ins. Co.

S. Margie Venus, Akin, Gump, Hauer & Feld, Houston, TX, Jack N. Bohm, Stuart Stein, Leawood, KS, for Regniers.

### MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtor is a chain of supermarkets, formed in 1988 by the leveraged buyout of a division of Safeway Stores, Inc. It presently operates some 40 plus supermarkets in Missouri and Kansas. It filed for Chapter 11 Reorganization in January of 1993. Movant is one of the many landlords of debtor. Movant filed a Motion For Relief From Automatic Stay in August of 1993. Hearing was had on September 23, 1993, and the Court's ruling announced at that time. This opinion memorializes that ruling.

Debtor's predecessor had been a tenant of Victor and Helen Regnier or one of their corporations for a number of years. It originally occupied a relatively small store on the north side of 95th Street in a strip shopping center. The Regniers, who have extensive holdings in Johnson County, wanted to build a larger shopping center, with space on three levels, on the south side of 95th Street. To obtain financing, the Regniers needed an anchor tenant; Safeway wanted to expand. From those compatible desires, a business marriage was fashioned whereby Safeway leased 55,000 square feet for 20 years, with 4 five year renewal options at $1.82 per square foot, or a greater percentage rent based on sales; the Regniers obtained the financing they needed; the shopping center was built and the parties lived happily—for awhile.

Safeway subleased one-half of its space to Katz Drug Company. The Regniers consented to the sublease. Katz was succeeded by Skaggs and then Osco Drug. Safeway exercised the first two of its four options for five years. The lease contained

no escalators. Ergo for 40 years Safeway had a sweetheart lease. The florist on the west of this space pays $11.00 per square foot for its space.

In 1988, Safeway sold its Missouri–Kansas Division to Food Barn Stores, Inc., the debtor. Safeway asked the Regniers for permission to sublet. The lease provided that the lease could not be assigned nor sublet without the consent of the landlord. However, it also provided that landlord's consent would not be unreasonably withheld. The Regniers responded through their attorney with a substantial list of conditions, but finally reduced their demands to two:

"1. Safeway shall assign back to Vic Regnier Builders, Inc. its interest in the portion of the Lease covering the drug store facility, presently subleased by Safeway to Osco Drugs.

2. Safeway shall provide a guarantee that the base rent that it pays under the Lease shall be substantially increased. This is to be effected by either (a) increasing the base rent to a level equal to the present base rent under the Lease plus the percentage rent paid by Safeway in 1987, or (b) modifying the Lease so that the Lessor shall have an absolute right to cancel the Lease in the event that the percentage rent paid by any subsequent tenant falls below the level of percentage rent paid in 1987".

Safeway took the position that these conditions were unreasonable, notified the Regniers' counsel thereof, and thereafter sublet the leased space to debtor, including certain options to renew.

It is the Regniers' position that this was a breach of the lease. Also, that since the Regniers never consented to the sublease that the debtor had no interest in the property and that it was not property of the estate. Merely as a precautionary matter they sought lift of the stay, even though debtor had no interest and it was not property of the estate. The Regniers apparently learned in their discovery in this case that Safeway claimed that debtor had not timely exercised one of its options and, therefore, was only a tenant at will on a

month to month basis. They claim that this reinforces their contention that debtor has no interest in the premises.

Debtor maintains that it has performed its sublease and has a sub-leasehold interest which extends to 2008 A.D. at $1.82 per square foot or at a percentage rent, whichever is greater. Debtor also claims that the Regniers are guilty of laches, unconscionable delay, etc. This is the background from which the legal issues must be viewed.

### FIRST ISSUE

■ 11 U.S.C. § 541(a) states that commencement of a case creates an estate and that it is comprised of:

"all legal or equitable interests of the debtor in property as of the commencement of the case wherever located and by whomever held".

To suggest that this is an extremely broad—even catchall-provision—is to state the obvious. To again be obvious, debtor has an interest in the premises, even if it was only a possessory interest. See *Mays v. United States of America*, 85 B.R. 955, 18 C.B.C.2d 911 (Bkr.E.D.Pa.1988). Courts have held that rights of redemption, after completion of foreclosure, pass to the trustee (debtor-in-possession) and are property of the estate. See *In re Roger Brown & Co.*, 196 F.758 (8th Cir.1912) and *In re Novak*, 111 F. 161 (N.D.Ia.1901). This is true even after a tax sale, *In re Argyle–Lake Shore Bldg. Corp.*, 78 F.2d 491 (7th Cir.1935). Since debtor was occupying the premises, was paying rent, and had had no pre-petition eviction proceedings concluded against it, it had at worst a possessory right to the premises which became property of the estate.

### SECOND ISSUE

Next we move to the automatic stay under 11 U.S.C. § 362(a)(3). That section provides that the filing of a petition operates as a stay of:

"any act to obtain possession of property of the estate or of property from the estate ..."

Therefore, the Regniers had to seek relief from the automatic stay to proceed in state court.

### THIRD ISSUE

■■■ 11 U.S.C. § 362(d) provides two possible bases for relief, and they are:

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization".

While subsection (1) above talks about cause, including lack of adequate protection, most cases and even bankruptcy commentators have concentrated their respective insights on the words "adequate protection" only. This Court interprets the phrase "for cause" to mean any reason whereby a creditor is receiving less than his bargain from a debtor and is without a remedy because of the bankruptcy proceeding. The automatic stay was designed to maintain and preserve the status quo as of the date of the petition. *Johnson v. First Nat'l Bank of Monevideo*, 719 F.2d 270, 277 (8th Cir.1983). Common examples are:

(1) Debtor is not making lease payments;

(2) Debtor is not paying taxes;

(3) Debtor is not providing insurance coverage;

(4) Debtor is not providing maintenance.

In each of these examples cause exists because of a failure of performance on the part of the lessor that harms the creditor's interests. The Code will not give more to the landlord than that which he had under the Lease. *In re Sapolin Paints, Inc.*, 5 B.R. 412, 420 (Bankr.E.D.N.Y.1980). "What the Code requires is that the lessor be given the performance for which he has contracted." *Id.* (The court determined that the causes raised by the landlord were insufficient to prevent the assumption of an advantageous commercial lease by the debtor.)

■■■ In this case, there is no indication but that debtor is paying its monthly rent, paying common area charges, paying taxes, etc. In a motion brought under 11 U.S.C. § 362(d)(1), the burden is on the movant. In this case the movant failed its burden. Movants' only contention was that the automatic stay (perhaps) kept them from seeking to break a lease under which they were currently receiving every monetary provision they had bargained for. The movants showed no breach by debtor of any of debtor's obligations.

■■■ Subsection (2) provides a second ground for relief from the stay. That ground is founded on the principle that if a debtor has no equity or value in property, it should go back to the creditor who has the economic interest in the item. This axiom does have a corollary, which is that if the item is necessary to an effective reorganization, the debtor may defeat the sought after relief. It is the movant's burden to show the lack of equity. It is then the debtor's burden to establish both the necessity of the item for an effective reorganization and the reasonable likelihood of such a reorganization. *United Savings Association of Texas v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Again, movant failed in its burden.

■■■ The value of a commercial lease is determined by taking the difference between the lease price and the current market price for the leased space. *In re Sapolin Paints, Inc.*, 5 B.R. at 418. Here, debtor is paying no less than $1.82 per square foot for space that the landlord apparently can rent for approximately $11.00 per square foot. (At least the florist who shares a party wall with the debtor is paying that price.) The difference is $9.18 per square foot per year. Debtor occupies 27,500 square feet (one half of the

original space let to Safeway) giving the lease a value of $252,450.00 per year. If the stay is lifted, debtor's rent in all likelihood will go up based on the result of the proposed state court litigation. No matter what the outcome, debtor is going to be financially adversely affected. Debtor has a decided economic interest in the continuance of the debtor's sublease, and the movants failed to show the Court why this interest is not equity held by the debtor in the property within the meaning of the Code. Therefore, movants have failed to meet their burden under § 362(d)(2)(A).

### FOURTH ISSUE

As to laches, movants' assertions that they did not know about the sale of the markets to debtor is not credible. Victor and Helen Regnier are not unsophisticated yokels dealing with an overbearing corporate giant. They own numerous shopping centers. The leveraged buy out of Safeway by debtor was front page news in 1987 and 1988. The Food Barn strike of more recent vintage was front page news for weeks. Victor Regnier admitted he saw pickets in front of the store. His office is above the store and he is in the store nearly every day. Movants want to escape the economic strictures of a 40 year lease that contained no escalators. The Court does not blame them. But movants' disaster is debtor's windfall and debtor has a substantial equity in its possession of these premises at a bargain rental.

### CONCLUSION

For all these reasons, the Court granted debtor's Motion For Judgment at the conclusion of movants' case and those same reasons are why Relief From The Stay is DENIED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.